■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HERMAN FORD, Also Known as "HAPPY" FORD, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Richmond County, rendered August 14, 1970, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, in the interests of justice, and new trial ordered. At the trial on an indictment charging murder, defendant did not deny his participation in the slaying, although he testified that when he struggled with the decedent, Ellsworth Bishop, allegedly in self-defense, he thought his knife was pointed away from the decedent's body. The prosecution relied largely on the testimony of three witnesses, Wayne Decker, Thomas Soutar and Randolph Briggs. Each of these witnesses admitted having had some past

personal involvement with hard drugs. Two of these men, Decker and Briggs, admitted on their respective cross-examinations that they had lied in their earlier testimony before the Grand Jury. Soutar, who did not testify before the Grand Jury, admitted on cross-examination that he had spoken to Assistant District Attorney Ralph Di Iorio concerning defendant's case prior to the trial at a time when drug possession and petit larceny charges were pending against him (Soutar), but he denied receiving any promises of leniency and denied believing that he would "get a break" by testifying against defendant. Decker also testified that he had spoken to a member of the District Attorney's staff concerning defendant's case prior to the trial. During all of the testimony by Soutar and Decker no denial of any promises of leniency was made by Assistant District Attorney Di Iorio and he sat by during the cross-examinations of these witnesses without mentioning the possiblity that the witnesses might mistakenly have been led to expect leniency or might have received the impression that they would "get a break" by testifying against defendant. The only statement addressed to this point was Di Iorio's remark in his summation that Soutar "has probably in the back of his head some idea that he is going to get some kind of a break" on the charges pending against him. At a posttrial hearing on defendant's motion for a new trial, it was brought out for the first time that a charge of possession of heroin was pending against Decker at the time he testified at defendant's trial. At the hearing, both Decker and Soutar steadfastly denied receiving any promises of leniency in their pending cases, although Soutar admitted that "in a sense" he had hoped he would receive consideration in exchange for his testimony. Assistant District Attorney Di Iorio also denied promising or even indicating to Soutar and Decker before the trial that they would get any breaks in exchange for their testimony. We are of the view that in the interests of justice a new trial must be held in this case. While it is clear that no explicit promises of leniency or consideration were extended to the key prosecution witnesses by members of the District Attorney's staff, it is also clear that during the course of discussions held between the prosecutor's staff and the witnesses before defendant's trial there was a substantial possibility that there had arisen in the minds of the witnessess the impression that their testimony incriminating defendant would be rewarded by the prosecutor with at least some "consideration" in the handling of the charges then pending against the witnesses. The likelihood that a deal was to be consummated must have been enhanced in Soutar's mind by the fact that he had been released on parole on the pending charges shortly before the beginning of defendant's trial and immediately prior to his conversation with Assistant District Attorney Di Iorio. Under these circumstances, it was incumbent upon the Assistant District Attorney to inform the court and the jury of all the facts and cirmustances surrounding the pretrial conversations with the key prosecution witnesses, including, but not limited to, the fact that there was a charge pending against Decker at the time he testified at defendant's trial. The fact that the prosecutor failed to make any such explanation at the time the incriminating testimony was being given and, instead, made only a limited explanation in his summation requires a new trial. Upon the new trial the jury will presumably have before it all the essential facts with which to properly and fairly assess the credibility of the prosecution witnesses. Rabin, P. J., Hopkins and Martuscello, JJ., concur; Munder, J., dissents and votes to affirm, with the following memorandum, in which Shapiro, J., concurs: I do not believe that the rule of *People* v. *Savvides* (1 N Y 2d 554) should be stretched to include such a situation as this, in which no promise of leniency or other consideration was made to secure the testimony of the witnesses in question

although there may have existed in their minds the hope that some consideration would be given for their aid to the prosecution. I think there was no duty on the District Attorney, in these circumstances, to confirm the witnesses' testimony of no promise or to explain the pretrial arrangement for that testimony. A district attorney's duty is to correct what he *knows* to be false and to elicit the truth (*People* v. *Savvides*, *supra*, p. 557). There was no such breach of duty here. We do not here have the factual pattern as in *People* v. *Mangi* (10 N Y 2d 86), where on the sentencing of a certain witness (Gordon) for the crime for which he had been convicted, the District Attorney stated to the court that he had told Gordon that while he could make no promise "'if he did testify as a People's witness, that that cooperation would be called to the Court's attention at the proper time'" and that "'Gordon relied on my statement to that effect, Judge, and was completely cooperative and did testify as a People's witness'" (p. 88). The fact that the witnesses were called by the prosecution to testify indicates that the Assistant District Attorney had had a pretrial conference with them and was aware of the nature of their testimony. We may not presume that such witnesses will never volunteer to testify against another except on a promise of a *quid pro quo*.